## STANOLIND PIPE LINE CO. v. LINCOLN COUNTY EXCISE BOARD.

No. 31368. June 29, 1943.

*139 P. 2d 598.*

Mastin Geschwind, of Oklahoma City, for plaintiff in error.

Walter F. Hill, County Atty., of Prague, for defendant in error.

HURST, J. This is an appeal from a judgment of the Court of Tax Review denying the protest of appellant, Stanolind Pipe Line Company, against an alleged excessive levy for the general fund of consolidated school district No. 2 of Lincoln county for the fiscal year 1942-43.

On June 26, 1942, the school board of said district entered into three written contracts for the repair of the school buses and the building belonging to the district. Although there were sufficient unencumbered funds on hand in the proper appropriation accounts to fully pay such obligations, certification of that fact was not indorsed on the contracts as directed by 62 O. S. 1941 § 311. The contracts were performed during July and August of that year. In September, claims for the material and labor furnished pursuant to the contracts were approved by the school board for payment from the unexpended balances of the appropriations for 1941-42. When preparing the estimate of needs and financial statement for the district for 1942-43, the school board showed the contracts as pending on June 30, 1942, and in computing the amount of cash on hand in the various appropriation accounts at the close of the fiscal year 1941-42 the board deducted an amount sufficient to satisfy said contracts. This, of course, reduced the amount of cash surplus carried forward to finance the approved estimated needs for the fiscal year 1942-43.

Appellant, by its protest, alleged that the true cash surplus was illegally reduced by the amount of the contracts and sought a corresponding reduction in the levy.

1. Relying on that part of 68 O. S. 1941 § 299 which provides that an appropriation, when made for any fiscal year, "shall not be used for any other fiscal year or purposes whatsoever," appellant first contends that a contract made before June 30th, but intended to be performed in the succeeding fiscal year, may not be charged against an appropriation for the fiscal year ending June 30th, since that would be to "use" the appropriation for another fiscal year.

The question thus presented is one of first impression in this court. In determining the question, our purpose, of course, is to discover the intention of the Legislature in enacting the statute and give it effect. After careful consideration we have concluded that while the Legislature, by this provision, intended to require that appropriations made for any fiscal year should be used only to pay indebtedness incurred in that year, it did not intend to require the benefit of every expenditure of an appropriation to accrue to the municipality during the fiscal year for which the appropriation was made.

There are certain practical considerations which limit the time during which any extensive repairs of school buildings and buses may be made. Generally they must be made during the summer vacation period. However, appropriations made after July 1st are not ordinarily approved and available for use until early in September, at which time school is ready to convene. For this reason school boards, as a practical matter, are required to make such repairs during the following summer. To refuse to permit them to enter into contracts the following June to be performed in July and August would greatly inconvenience the boards and would serve no good purpose. It follows that if in fact there is a necessity to repair school property, apparent to the board in June, it may determine that fact and contract against existing valid appropriations, even though the materials and labor may not be used or performed until the expiration of the fiscal year in which the contract is made.

It should be noted that our decision here in no way conflicts with the provisions of section 26 of article 10 of the Constitution. The district has not become indebted in a fiscal year in excess of the revenue provided for that year. Cases cited by appellant on that issue are not in point.

2. Appellant next contends that since the contracts were not certified as required by 62 O. S. 1941 § 311, they were not valid unsettled legal obligations of the school district on June 30, 1942, and could not be then legally charged against the cash on hand. It concedes that under our decision in State v. Board of Commissioners of LeFlore County, 177 Okla. 470, 60 P. 2d 788, an uncertified obligation may be legally paid, if, at the time of payment, there remains a sufficient unencumbered balance on hand in the proper appropriation account, but asserts that the obligation becomes valid only on the date of payment, and that the payment does not amount to a ratification relating back to the date of the contract. It points to certain language in the case of State v. Board of Commissioners of LeFlore County, above, to sustain its contention. In that case the question of the ratification of a contract in a succeeding fiscal year by payment from funds reserved therefor from the appropriation of the prior year was not involved. Our holding therein was simply to the effect that a contract, not certified as required by 62 O. S. 1941 § 311, could nevertheless be paid, if, at the time of payment, there existed an unexpended, unencumbered balance of funds in the appropriation made for that purpose. It was made to avoid the harsh results of declaring contracts not so certified to be absolutely void in all cases, when the purpose for which the law was enacted did not require such construction.

In that case we did not hold, as appellant contends, that the governing board entered into a valid contract for the first time on the day of ratification by payment. We held rather that the obligation was only contingently invalid. We said:

"We, therefore, determine that the contract here is not declared wholly void and without effect by the terms of section 1 of chapter 49, S. L. 1925, but that it is only invalid and subject to be rightfully overthrown upon a showing of insufficient appropriations for the purposes of payment of same."

In the instant case the contract was entered into in June. The school board could not legally pay the contract prices prior to June 30th, because the contracts had not then been performed.

62 O. S. 1941 § 483. At the close of the fiscal year, the board reserved an amount sufficient to liquidate the obligations when the labor thereunder should be completed. This amount remained unexpended at the time the contracts were completely performed and claims therefor allowed. We conclude, therefore, that the contingency upon which the contracts might be overthrown never occurred and that the obligations were valid from their inception.

It follows that the amounts of the contracts were properly deducted from the appropriations in computing the cash on hand at the close of the fiscal year 1941-42, and that the protest was properly denied.

Affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, WELCH, DAVISON, and ARNOLD, JJ., concur.